Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on February 23, 1996, as a result of which the parties entered into the Form 21 Agreement. The plaintiff has received temporary partial disability benefits pursuant to the Form 21 from February 24, 1996 through March 2, 1997.
5. The plaintiff's average weekly wage was $1,182.75, which yields a maximum compensation rate of $492.00 per week.
6. The issue for determination is to what amount of compensation is the plaintiff entitled as a result of the admittedly compensable injury for permanent impairment to his neck.
7. The parties stipulated the following documentary evidence into the record:
 a. Stipulated Exhibit 1 — List of benefits paid to the plaintiff, two pages;
 b. Stipulated Exhibit 2 — Medical Records of Dr. Stephen Ainsworth, Dr. F. M. McCarthy, East Carolina Neurology, and Triangle Spine Back Care Center, thirty-one pages; and
 c. Plaintiff's Exhibit 1 — Affidavits of Gene Modlin, Jesse Griffin, and Jim Veneris. However, with respect to statements in the affidavit of Jesse Griffin regarding Mr. Griffin's treatment with Dr. McCarthy, said statements are stricken from the record.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, the plaintiff was a forty-five year old male, who was employed as a senior utility mechanic. The plaintiff had been employed with the defendant for twenty-one years. The plaintiff's duties included working on pneumatic conveying systems, boilers, turbines, air compressors, and other mill-wide machinery. He regularly utilized come alongs, chain falls, and electric impact guns. The plaintiff's toolbox weighed over twenty pounds, with tools such as the electric impact guns weighing between thirty and forty pounds.
2. On February 23, 1996, the plaintiff sustained an admittedly compensable injury to his cervical spine. Dr. Stephen Ainsworth initially treated the plaintiff on March 20, 1996. Following an examination, Dr. Ainsworth diagnosed the plaintiff with a cervical strain. Aggressive physical therapy, a TENS unit and traction were ordered. The plaintiff returned on April 10, 1996, at which time Dr. Ainsworth ordered work restrictions of no lifting, pushing or pulling over twenty pounds. On May 8, 1996, Dr. Ainsworth injected the plaintiff's trigger point on the supermedial border of the scapula, and continued the job restrictions. On September 10, 1996, Dr. Ainsworth found plaintiff had reached maximum medical improvement and retained a ten percent permanent partial impairment to the spine. Permanent work restrictions of no overtime and the lifting restrictions were continued.
3. After receiving the rating from Dr. Ainsworth, Sharon Brinson, manager/representative with Weyerhaeuser, referred the plaintiff to Dr. William Lestini of Triangle Spine Back Care Center in Raleigh, North Carolina, for a second opinion.
4. On October 3, 1996, Dr. Lestini examined the plaintiff and found it appropriate to continue the modified duty restrictions imposed by Dr. Ainsworth. Diagnostic studies, which included an EMG and nerve conduction, were ordered. On January 21, 1997, the plaintiff returned to Dr. Lestini following the nerve studies, in which Dr. Gary Smoot was unable to obtain a reliable response at either the left or right side above the scapular spine midline. The tests showed that the plaintiff's nerve function was within normal limits. Dr. Lestini found the plaintiff had reached maximum medical improvement with a zero permanent partial impairment to his spine and released the plaintiff to resume normal work duties.
5. Dr. Ainsworth received Dr. Lestini's office notes following the examination and diagnostic tests. By letter dated February 19, 1997, Dr. Ainsworth agreed that plaintiff could return to his regular job and could be allowed to work overtime.
6. After receiving the rating from Dr. Lestini, the plaintiff requested authorization to seek a second opinion from a doctor of his choosing who was near his home. On July 29, 1997, Dr. Francis McCarthy of Coastal Albemarle Orthopedics saw him. Dr. McCarthy found the plaintiff to have chronic cervical and thoracic strain and right lateral epicondylitis. Based upon the AMA Guidelines, Dr. McCarthy found the plaintiff retained zero permanent partial impairment to his whole person as a result of the injury to the spine and right upper extremity.
7. After Dr. Ainsworth found the plaintiff to have reached maximum medical improvement, Dr. Ainsworth continued to impose restrictions on the plaintiff's work duties and agreed that the EMG and nerve conduction studies ordered by Dr. Lestini were appropriate. The Commission gives greater weight to the opinion of Dr. Lestini as to the date the plaintiff reached maximum medical improvement, since after Dr. Lestini's evaluation, the plaintiff was released by both Drs. Lestini and Ainsworth to return full-time, including overtime, to his regular job.
8. After the plaintiff reached maximum medical improvement on January 21, 1997, the defendant continued to pay him temporary partial disability compensation until March 7, 1997.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, the plaintiff is entitled to permanent partial disability compensation at the rate of $492.00 per week for thirty weeks as a result of the ten percent rating to the back which was assigned by the authorized treating physician. N.C. GEN. STAT. § 97-31(23). The defendant is entitled to a credit for the temporary partial disability compensation paid to the plaintiff from January 21, 1997, through March 7, 1997.
2. The plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay permanent partial disability compensation at the rate of $492.00 per week for thirty weeks in a lump sum, subject to a credit for any overpayment of temporary partial disability compensation.
2. Defendant shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act.
3. Defendant shall pay the costs.
This the ___ day of March 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/bjp